### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ROBERT L. JACKSON, # 162274,

                    Petitioner,

v.                                                    Case No. 08-cv-10412
                                                      Honorable Arthur J. Tarnow

KENNETH MCKEE,

                    Respondent.
_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

### I. INTRODUCTION

Petitioner Robert L. Jackson, a state inmate currently confined at the Macomb

Correctional Facility[1] in New Haven, Michigan, filed a *pro se* petition for a writ of habeas

corpus under 28 U.S.C. § 2254. Petitioner was convicted of (1) first-degree murder, MICH.

COMP. LAWS § 750.316(a), (2) felonious assault, MICH. COMP. LAWS § 750.82, and (3) felony

firearm, MICH. COMP. LAWS § 750.227(b)(a), by a Wayne County, Michigan, circuit court jury.

On April 6, 2004, he was sentenced, as a habitual offender, fourth offense, to (1) life in prison

for the murder conviction, (2) one to four years in prison for the felonious-assault conviction,

_____

[1]Petitioner was incarcerated at the Bellamy Creek Correctional Facility when he originally filed his habeas petition; however, he has since been transferred to the Macomb Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

and (3) a consecutive two years in prison for the felony-firearm conviction.  In his *pro se* pleadings, Petitioner raises two claims: (1) the evidence was insufficient to convict him of first-degree murder, and (2) he was denied the effective assistance of trial counsel because counsel failed to investigate and prepare all substantial defenses.  The Court will deny the petition, because it is not persuaded there was a constitutional violation.  The Court will also decline to issue Petitioner a certificate of appealability but will grant him an application to proceed on appeal *in forma pauperis*.

## II.  BACKGROUND

This case arises because of a shooting that occurred on November 4, 2003, resulting in the death of Anthony Bostic.  Testimony at trial revealed the following.

Bostic was helping his godmother, Elaine Scott, rake the leaves at Scott's house.  Petitioner, who lived next door to Scott, was watching the work from across the street.  After a short period of time, Petitioner approached Scott and indicated that he had a problem with the way the leaves were being removed.  A minor argument occurred between Scott and Petitioner before Bostic stepped in.  Petitioner and Bostic then began arguing.  As Petitioner started walking away, Bostic grabbed him and pushed him to the ground.  Petitioner got up and walked to his house.  Bostic continued working in the yard.

A short time later, Scott heard the door of Petitioner's house open and saw him on his porch with a rifle.  Scott testified that she then heard two or three shots.  She said she tried to help Bostic but was prevented from doing so because Petitioner started shooting toward her.  She said she ran into the house and called 911.  While on the phone, Scott heard more gunshots.  According to Scott, Petitioner walked over to Bostic and fired a few more shots at him while he

2

was lying wounded on the lawn.  Shots then broke through Scott's windows and into the house.

Scott ran out of the house and encountered Petitioner, who said he would kill her too.  He then

fired toward her.

Scott ran back into the house unharmed.  A few moments later, the shooting stopped and

Scott ran out to help Bostic.  Petitioner went back into his house.

An off-duty police officer, Carl Freeman, who lived down the street, went to Petitioner's

house to investigate.  Petitioner told Officer Freeman that he snapped. Petitioner then told

Officer Freeman where the gun was located.

When the police arrived, they recovered the loaded AK-47 rifle from the house.  At least

fourteen spent casings were recovered from around the area of the shooting.  The officers also

found Bostic, non-responsive and bleeding from his chest, and transported him to the hospital.

Dr. Carl Schmidt, the Chief Wayne County Medical Examiner who reviewed the autopsy

report performed by Dr. Yung Chung, testified that Bostic had been shot five times.  There was a

wound to the chest, where the bullet perforated the heart and lungs, and a wound to the abdomen,

where the bullet perforated major veins and arteries.  Dr. Schmidt noted that the cause of death

was multiple gunshot wounds.

After the police searched the house, they transported Petitioner to the station.  While in

the car, Petitioner told the officers that Bostic pushed him down in front of his son so, he went

into the house, loaded his gun, and "sprayed his ass."  Trail Tr. vol. I, 97, Mar. 18, 2004.

Petitioner said he was upset because Bostic treated him "like a bitch over some leaves."  Trial

Tr. vol. I, 98, Mar. 18, 2004.  Later, as Petitioner was being transported to the Homicide Section,

he said Bostic pushed him into the street so he kept shooting Bostic until he felt satisfied.

3

Later that day, Sergeant Barbara Higgins met with Petitioner at the Detroit Police Homicide Section.  Sergeant Higgins informed Petitioner of his constitutional rights and Petitioner agreed to waive those rights and make a statement.  Petitioner told Sergeant Higgins that Bostic was blowing leaves into his yard so he approached Scott to talk about it.  Bostic intervened and started yelling at him.  When he started walking away, Bostic knocked him down. Petitioner said he knew he could not fight Bostic because of his hip replacements and emphysema so, he walked home.  Once inside his house, he saw his son crying.  He then got his AK-47 and went back outside.  He shot Bostic several times and then shot at Scott to keep her out of his way.  He then returned to his house and waited for the police to arrive.  Petitioner said he was tired of Bostic pushing him around and when he got pushed to the street, "it was the straw that broke the camel's back."  Trial Tr. vol. I, 139, Mar. 18, 2004.

Petitioner's statement was admitted into evidence.  He did not testify.

On March 23,2004, the jury found him guilty of first degree murder.

Petitioner filed an appeal of right with the Michigan Court of Appeals, raising an insufficient-evidence claim.  On June 23, 2005, the Court of Appeals affirmed his convictions. *People v. Jackson*, No. 254994, 2005 WL 1490089 (Mich.Ct.App. June 23, 2005).

Petitioner then filed an application for leave to appeal that decision with the Michigan Supreme Court, raising the same claim.  On November 29, 2005, the Supreme Court denied the application.  *People v. Jackson*, 474 Mich. 939, 706 N.W.2d 20 (2005).  Petitioner did not file a writ of certiorari in the United States Supreme Court.

Rather, Petitioner filed a post-conviction motion in the state court, raising the following claims: (1) trial counsel was ineffective for failing to investigate and prepare all substantial

4

defenses, (2) he established good cause for failing to raise his claims on direct appeal, and (3) he was denied his right to present a defense of diminished capacity. The trial court denied his motion. *People v. Jackson*, No. 03-012989-01 (Wayne County Circuit Court, May 17, 2006).

Petitioner filed a delayed application for leave to appeal that decision with the Michigan Court of Appeals, but the application was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jackson*, No. 273562 (Mich.Ct.App. Apr. 5, 2007). Petitioner's application for leave to appeal the Court of Appeals's decision, filed with the Michigan Supreme Court, was denied on September 10, 2007, "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jackson*, 480 Mich. 860, 737 N.W.2d 696 (2007).

Petitioner filed this habeas petition on January 29, 2008, raising the following claims: (1) there was insufficient evidence presented at trial to support his conviction for first-degree murder, and (2) he was denied his right to the effective assistance of counsel because counsel failed to investigate and prepare all substantial defenses.

### III. STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state-court

factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  *Id.* at 409.  A federal-habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable."  *Id.* at 410-11.

Petitioner must therefore demonstrate that the state appellate court's decision was

contrary to or involved an unreasonable application of existing federal law.

## IV.  DISCUSSION

### A.  Claim I–Insufficient Evidence

In his first habeas claim, Petitioner contends that there was insufficient evidence to

convict him of first-degree murder.

Clearly established Supreme Court law holds that the due process clause protects a

criminal defendant from being convicted of a crime without proof beyond a reasonable doubt of

every element of an offense.  *In re Winship*, 397 U.S. 358, 368 (1970).  The standard of review is

whether "*any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original).

6

The reviewing court does not reweigh the evidence or redetermine the credibility of the

witnesses whose demeanor has been observed by the finder of fact. *Marshall v. Lonberger*, 459

U.S. 422 (1983). The reviewing court "faced with a record of historical facts that supports

conflicting inferences must presume–even if it does not affirmatively appear on the record–that

the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

resolution." *Wright v. West*, 505 U.S. 277, 296-97 (1992). This standard of review does not

permit a federal habeas court to make its own subjective determination of guilt or innocence; the

standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony,

to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate

facts. *Herrera v. Collins*, 506 U.S. 390, 399 (1993); *Matthews v. Abramajtys*, 319 F.3d 780,

788-89 (6th Cir. 2003). "It is the province of the fact-finder to weight the probative value of the

evidence and resolve any conflicts in testimony." *Id.* (citing *Neal v. Morris*, 972 F.2d 675, 679

(6th Cir. 1992). Therefore, the "mere existence of sufficient evidence to convict . . . defeats a

petitioner's claim." *Id.*

Petitioner raised this issue in his direct appeal, but the Michigan Court of Appeals

rejected it, stating:

> The elements of first-degree murder requires a showing that the
> defendant's actions caused the victim's death, the defendant intended to kill the
> victim, and "the act of killing was premeditated and deliberate." *People v.
> Anderson*, 209 Mich.App 527, 537; 531 NW2d 780 (1995). "Although there is no
> specific time requirement, sufficient time must have elapsed to allow the
> defendant to take a 'second look.'" *People v. Plummer*, 229 Mich.App 293, 300;
> 581 NW2d 753 (1998). The *Plummer* Court described the factors to he
> considered to establish premedition, including
>
>> (1) the previous relationship between the defendant and the victim;
>> (2) the defendant's actions before and after the crime; (3) the

circumstances of the killing itself, including the weapon used and
the location of the wounds inflicted.  [*Id.* at 300.]

Based on our review of the record, we conclude that that there was
sufficient evidence to support defendant's first-degree murder conviction. There
was strong evidence that defendant had time to reflect on his actions. Defendant's
argument with Elaine Scott and Anthony Bostic was interrupted by defendant's
departure, to his own home, where he went inside.  There was testimony by Scott
that it took five to eight minutes before defendant returned with his weapon, an
AK-47, which he used to shoot Bostic.

Defendant's written statement noted as follows:

Q.  Do you know the man you shot?
A.  I don't know his name.  He's come over to chastise me before about my
cousin's car that had been parked near Elaine's driveway. . . .  One other time he
came over when I was sitting on the porch but Elaine [s]topped him.
Q.  Why did you shoot the man?
A.  Because he knocked me to the . . . ground.  I was tired. . . . I was trying to
avoid his [expletive deleted]. . . .  When he pushed me, that was the straw that
broke the camel's back.

Thus, there was evidence of a longstanding grievance against Bostic. The
fight over the leaves was merely the last in a series of events. Defendant already
had his weapon by his couch.  There was also evidence that defendant had loaded
his rifle just prior to the shooting, which demonstrates another opportunity for
defendant to reflect on what he was doing.

Additionally, after shooting Bostic from his porch, defendant walked over
to him, while he was lying on the ground, and shot him again.  Police witnesses
observed that defendant was not irate following the incident and was not
shouting, but was very calm.  Defendant's statements after the shooting further
support a finding of premeditation.  Defendant stated to a police officer that
Bostic "wouldn't push me down.  I'll kill the . . . ." Defendant said he "sprayed"
Bostic, that he would "cut all these people," and that "[no one's] gonna push me
down . . . in front of my son . . . ."

*Jackson*, 2005 WL 1490089, at *1-2.

Viewing all of the evidence in a light most favorable to the prosecution, the jury was

presented with sufficient evidence to find Petitioner guilty of the charges beyond a reasonable

8

doubt.  The determination by the Michigan Court of Appeals is supported by the record.

Petitioner is therefore not entitled to habeas relief regarding this claim.

### B.  Claim II–Ineffective Assistance of Trial Counsel Claim

In his second habeas claim, Petitioner alleges that trial counsel should have investigated a diminished capacity defense, a defense of psychotic behavior induced by prescription medication.  He alleges that his long-term use of steroid medications could have played a role in his violent assault on his neighbor and her godson.  This claim was not raised in Petitioner's direct appeal to the Michigan Court of Appeals and the Michigan Supreme Court.  Rather, the claim was raised for the first time in a post-conviction motion for relief from judgment under Mich.Ct.R. 6.501, *et.seq*.

Following the denial of Petitioner's post-conviction motion, the Court of Appeals and the Supreme Court, the last state courts rendering judgment on the claim, both denied relief, in standard form orders, on the grounds that Petitioner had failed to demonstrate entitlement to relief under Mich.Ct.R. 6.508(D).  Respondent asserts that review of this claim is procedurally defaulted because Mich.Ct.R. 6.508(D)(3) required Petitioner to present this claim to the state courts during his direct appeal.

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (same); *Coleman v. Mitchell*, 244 F.3d

533, 539 (6th Cir. 2001) (same).  The last explained state court judgment should be used to make

that determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment

is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last

reasoned opinion.  *Id.*

The Sixth Circuit recently held that the form orders used by the Michigan appellate

courts are unexplained because they are ambiguous as to whether they refer to a procedural

default or the denial of right on the merits.  *Guilmette v. Howes*, --- F.3d ---, 2010 WL 4117281

(6th Cir. 2010).  It stated:

> Brief orders citing Michigan Court Rule 6.508(D) are not explained orders
> invoking a procedural bar.  We reach this result because holdings from the
> Michigan courts indicate that the language used by such summary orders can refer
> to the petitioner's failure to establish entitlement to relief either on the merits or
> procedurally, and such ambiguity demands a
> determination that the orders are not explained.
>
> * * *
>
> The second part of this rule requires federal courts to determine the basis on
> which state courts rejected a given claim . . . .

*Guilmette*, 2010 WL 4117281, at *2.  Under *Guilmette*, the Court must "look through" the

unexplained orders of the Michigan appellate courts to the decision of the state trial court to

determine the basis for the denial of state post-conviction relief.

In this case, the trial court denied Petitioner's post-conviction motion on the merits.  It

also denied his motion for a evidentiary hearing.  Thus, the Court concludes that this claim is not

procedurally defaulted.  The trial court correctly analyzed this claim under *Strickland v.

Washington*, 466 U.S. 668, 687 (1984).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  *Id.*  In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Id.* at 689.  Second, the defendant must show that such performance prejudiced his defense.  *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

It is well-established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S. at 690).

The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel.  *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

In this case, the trial court, in its six-page opinion, found that the Michigan Supreme Court, in 2001, "ruled that the defense of diminished capacity was precluded by statute." *Jackson*, No. 03-012989-01, at *4 (citing *People v. Carpenter*, 464 Mich. 223, 627 N.W.2d 276 (2001)).  The trial court concluded that Petitioner's trial counsel was therefore "not ineffective

11

for failing to argue a diminished capacity defense when the law does not permit the affirmative defense to negate specific intent." *Jackson*, No. 03-012989-01, at 5. Moreover, Petitioner, in his post-conviction brief, admitted that he was not mentally ill or legally insane at the time of the shooting. *Id.*, fn.1. Furthermore, the trial court acknowledged that trial counsel was aware of the issue because "the medical records show[ed] that [Petitioner] was treated for a respiratory disease and prescribed many prescription medications." *Id.* at 2. Additionally, Petitioner's wife's affidavit stated that she saw trial counsel "receive a copy of the medical records for the purpose of investigating and presenting a defense of prescription drug-induced psychosis." *Id.* Regarding Petitioner's ineffective assistance of counsel claim, the trial court concluded:

> Trial counsel argues that the defendant suffered from a personality disorder that contributed to his violent behavior in an attempt to show that the defndant acted in hot blood. If the jury believed the defense it could have found him guilty of the lesser offense of second-degree murder. The jury found the defendant guilty of the first-degree murder. The court may not repudiate the jury's finding. A reviewing court "should not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses." The jury may believe or disbelieve, in whole or in part, any of the evidence presented.

*Id.* (citations omitted).

Accordingly, Petitioner has failed to show that his trial counsel was ineffective, given that Michigan no longer recognizes diminished capacity as a valid defense. And, because Petitioner has failed to show that his trial counsel was ineffective, he is unable to establish that appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claim in his appeal of right. *Johnson v. Smith*, 219 F.Supp.2d 871, 883 (E.D. Mich. 2002).

The Court therefore concludes that Petitioner is not entitled to habeas relief regarding this claim.

12

**C. Certificate of Appealability**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must:

> issue or deny a [COA] when it enters a final order adverse to the applicant . . . .  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).

Rule 11, Rules Governing Section 2254 Proceedings.

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Courts must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed.R.App.P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).  To receive a COA, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).

The Court finds that no reasonable jurist would debate about the resolution of Petitioner's claims.  Therefore, the Court declines to issue Petitioner a COA with respect to his claims.

However, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for COAs.  *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002) (citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997)).  Whereas a COA may only be granted if petitioner makes a substantial showing of the

13

denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being

taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); FED.R.APP.P. 24(a). "Good faith"

requires a showing that the issues raised are not frivolous; it does not require a showing of

probable success on the merits. *Foster*, 208 F.Supp.2d at 765. Therefore, Petitioner may

proceed *in forma pauperis* on appeal. *Id.*

## IV.  CONCLUSION

      **IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.

      **IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a certificate of

appealability.

      **IT IS FURTHER ORDERED** that Petitioner will be **GRANTED** leave to appeal *in

forma pauperis*.


            S/Arthur J. Tarnow
            Arthur J. Tarnow
            Senior United States District Judge

Dated: January 11, 2011

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record
on January 11, 2011, by electronic and/or ordinary mail.

            S/Catherine A. Pickles
            Judicial Secretary